## UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

JUSTIN YOST,             )
                                )
      **Plaintiff,**         )
                                )
**v.**                       )     **Case No. CIV-15-783-F**
                                )
**SHIRLEY STOUFFER et al.**    )
                                )
      **Defendants.**     )

## REPORT AND RECOMMENDATION

Plaintiff Justin Yost, a state prisoner appearing pro se, brings this federal civil rights action under 42 U.S.C. § 1983 alleging violations of the United States Constitution. *See* Compl. (Doc. No. 1). United States District Judge Stephen P. Friot has referred this matter to the undersigned for preliminary review in accordance with 28 U.S.C. § 636. All Defendants now seek dismissal of this lawsuit, with two motions to dismiss at issue.

### PLAINTIFF'S CLAIMS AND RELIEF SOUGHT

Plaintiff is presently incarcerated at Lawton Correctional Facility ("LCF"), which is a private prison owned and operated by GEO Group, Inc. ("GEO"). Compl. at 1, 3.[1] In his Complaint, Plaintiff alleges claims against four Defendants: (1) Shirley Stouffer, the LCF Correctional Health Services Administrator; (2) GEO; (3) Oklahoma Department of Corrections ("ODOC"); and (4) Genese McCoy, ODOC's Medical Services Administrator. *See id.* at 1-2, 3. Plaintiff purports to sue ODOC in its official capacity and all other Defendants in both their individual and official capacities. *See id.*

---

[1] Citations to documents filed in this Court use the page numbers assigned by the Court's electronic filing system.

Plaintiff's claims arise from events alleged to have occurred while he has been housed at LCF. *See id.* at 2, 4-8, 10. Plaintiff claims that Defendants have violated his rights under the Eighth Amendment by denying him proper medical treatment for his psoriasis and related health issues. *See id.* Plaintiff seeks nominal, compensatory, and punitive damages as well as declaratory and injunctive relief. *Id.* at 10.

## STANDARD OF REVIEW

While the Court construes a pro se litigant's pleadings liberally, all parties must adhere to applicable procedural rules. *See Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007). Under such rules, the plaintiff must state a claim upon which relief may be granted, i.e., the complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The court reviewing the sufficiency of a complaint "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1175 (10th Cir. 1997).

Defendants McCoy and ODOC (collectively, "ODOC Defendants") filed a joint Motion to Dismiss (ODOC Mot. to Dismiss (Doc. No. 25)), to which Plaintiff has responded (Pl.'s ODOC Resp. (Doc. No. 38)). ODOC Defendants replied (ODOC Reply (Doc. No. 40)), and Plaintiff submitted an unauthorized surreply (Doc. No. 46); *see* LCvR 7.1(i)). Defendants Stouffer and GEO (collectively, "LCF Defendants") have likewise filed a joint Motion to Dismiss (LCF Mot. to Dismiss (Doc. No. 34)), and Plaintiff has responded (Pl.'s LCF Resp. (Doc. No. 42)). In addition, Defendants have filed a Special Report (Doc. No. 33), in accordance with the Court's order and *Martinez*

*v. Aaron*, 570 F.2d 317 (10th Cir. 1978). Plaintiff has submitted an unauthorized response to the Special Report, *see* Doc. No. 44. In reaching a recommendation on the Motions to Dismiss, the undersigned has declined to convert the Motions to motions for summary judgment and has excluded from consideration the Special Report, Plaintiff's proffered exhibits (*see* Doc. Nos. 38-1 to -3, 42-1 to -21, 44-1 to -18, 46-1 to -3), and all other evidence outside the pleadings. *See* Fed. R. Civ. P. 12(d); *Lowe v. Town of Fairland*, 143 F.3d 1378, 1381 (10th Cir. 1998).

Defendants move to dismiss certain of Plaintiff's claims pursuant to Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In analyzing a motion to dismiss under that rule, the court "accept[s] as true all well-pleaded factual allegations in the complaint and view[s] them in the light most favorable to the plaintiff." *Burnett v. Mortg. Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1235 (10th Cir. 2013). A complaint fails to state a claim on which relief may be granted when it lacks factual allegations sufficient "to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). Bare legal conclusions in a complaint are not entitled to the assumption of truth; "they must be supported by factual allegations" to state a claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

"[A] pro se plaintiff requires no special legal training to recount the facts surrounding his alleged injury, and he must provide such facts if the court is to determine whether he makes out a claim on which relief can be granted." *Hall v. Bellmon*, 935 F.2d

1106, 1110 (1991); *see also Whitney*, 113 F.3d at 1173-74.  Whether a complaint contains sufficient facts to avoid dismissal is context-specific and is determined through a court's application of "judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

ANALYSIS

## I.     ODOC Defendants' Eleventh Amendment Immunity to Suit

Citing the Eleventh Amendment to the U.S. Constitution, Defendant ODOC seeks dismissal of Plaintiff's federal claims, and Defendant McCoy seeks to dismiss Plaintiff's 42 U.S.C. § 1983 claims to the extent Plaintiff seeks money damages from Defendant McCoy in her official capacity.  *See* ODOC Mot. to Dismiss at 18-20; ODOC Reply at 3-5; Compl. at 2, 3, 10; Fed. R. Civ. P. 12(b)(1).  The Court therefore is obligated to address whether Defendants McCoy and ODOC enjoy immunity from suit.  *See U.S. ex rel. Burlbaw v. Orenduff*, 548 F.3d 931, 942 (10th Cir. 2008) (noting that if a state defendant raises the issue, "addressing the threshold jurisdictional matter [is] obligatory"); *Fent v. Okla. Water Res. Bd.*, 235 F.3d 553, 558-59 (10th Cir. 2000) (holding that Eleventh Amendment immunity "can be waived" but "constitutes a bar to the exercise of federal subject matter jurisdiction" when effectively asserted).

Pursuant to the doctrine of sovereign immunity, as adopted in the Eleventh Amendment, a federal court may not hear a claim brought by a private citizen against a U.S. state.  U.S. Const. amend. XI; *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54, 65 (1996).

But Eleventh Amendment immunity is not absolute.  There are three exceptions. First, a state may consent to suit in federal court.  Second, Congress may abrogate a state's sovereign immunity by appropriate

> legislation when it acts under Section 5 of the Fourteenth Amendment. Finally, under *Ex parte Young*, 209 U.S. 123 (1908), a plaintiff may bring suit against individual state officers acting in their official capacities if the complaint alleges an ongoing violation of federal law and the plaintiff seeks prospective relief.

*Muscogee (Creek) Nation v. Pruitt*, 669 F.3d 1159, 1166 (10th Cir. 2012) (citations omitted). Eleventh Amendment immunity applies to any state agencies considered to be "arms of the state." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70-71 (1989). A defendant's status as an arm of the state is a question of federal law, but courts make this determination by analyzing the "nature of the entity created by state law." *Steadfast Ins. Co. v. Agric. Ins. Co.*, 507 F.3d 1250, 1253 (10th Cir. 2007) (internal quotation marks omitted).

"Oklahoma has not consented to be sued in federal court." *Berry v. Oklahoma*, 495 F. App'x 920, 921 (10th Cir. 2012); *accord Callahan v. Poppell*, 471 F.3d 1155, 1159 (10th Cir. 2006). Nor has Congress abrogated state immunity through enactment of 42 U.S.C. § 1983. *Berry*, 495 F. App'x at 921-22; *Quern v. Jordan*, 440 U.S. 332, 342-45 (1979). Thus, the State of Oklahoma's Eleventh Amendment immunity from § 1983 claims for money damages in federal court remains intact.

Defendant ODOC "is . . . shielded by sovereign immunity because it is an arm of the state." *Berry*, 495 F. App'x at 922 (citing *Eastwood v. Dep't of Corr. of Okla.*, 846 F.2d 627, 631-32 (10th Cir. 1988)). And as to Defendant McCoy, "it is well-established that 'the Eleventh Amendment precludes a federal court from assessing damages against state officials sued in their official capacities because such suits are in essence suits against the state.'" *Peterson v. Lampert*, 499 F. App'x 782, 786 (10th Cir. 2012)

(quoting *Hunt v. Bennett*, 17 F.3d 1263, 1267 (10th Cir. 1994)). ODOC's immunity extends to a plaintiff's § 1983 claims against ODOC employees who are sued in their official capacities for damages. *Cleveland v. Martin*, 590 F. App'x 726, 730 (10th Cir. 2014) ("Because the defendants are employees of the Oklahoma Department of Corrections . . . , the Eleventh Amendment applies to the official-capacity claims for damages."); *accord Turner v. Nat'l Council of State Bds. of Nursing, Inc.*, 561 F. App'x 661, 665 (10th Cir. 2014). Defendant McCoy, as an employee of ODOC in her official capacity, therefore is protected by Eleventh Amendment immunity to the extent damages are sought by Plaintiff under 42 U.S.C. § 1983. *See Cleveland*, 590 F. App'x at 730; *Eastwood*, 846 F.2d at 632.

Accordingly, Plaintiff's § 1983 claims against ODOC, and all § 1983 claims seeking monetary relief from Defendant McCoy in her official capacity, are barred by the Eleventh Amendment and should be dismissed without prejudice.

## II. Plaintiff's Remaining 42 U.S.C. § 1983 Claims

### A. *Plaintiff's Allegations*

Plaintiff asserts that he has been denied proper medical care since arriving at LCF in November 2009. *See* Compl. at 2, 4-8. Plaintiff's Complaint lays out in detail the factual underpinnings of his alleged "denial of medical service" in violation of the Eighth Amendment. *Id.* at 4. Liberally construed, Plaintiff raises two separate claims: one based upon Defendants' treatment of his medical issues from 2010 to mid-2014 (the "Medical Treatment" claim), and another based upon Defendants' refusal to provide Plaintiff with

an appointment with a rheumatologist beginning in September 2014 (the "Rheumatologist Claim"). *See id.* at 2, 4-8, 10.

Plaintiff's Complaint, filed on July 17, 2015, alleges that he suffers from severe plaque psoriasis over his "entire body" and that "this condition has been on-going, documented and diagnosed since 1991." Compl. at 2. Plaintiff alleges that he has sought treatment for this condition at LCF repeatedly since 2010. *Id.* at 2, 5.[2]

In January 2010, Plaintiff submitted a request for medical services to obtain more of the T-Gel shampoo that he had been previously prescribed "to assist in the burning, itching, cracking, bleeding, inflamed bleeding skin all over [his] body." *Id.* at 5. "It took weeks" for Plaintiff to get the shampoo. *Id.*

On March 10, 2010, Plaintiff submitted a medical request because his feet were bleeding and cracking and in pain. Plaintiff received a medical appointment on March 22, 2010, and was told that LCF could not afford his requested shoes for inmates and "there's really nothing we can do for you." *Id.* Plaintiff states that he spent the next three years in pain, with bleeding and itching, but also specifically alleges that during this time he was "prescribed and provided medications that attempted to alleviate these conditions." *Id.*

---

[2] LCF Defendants argue that the applicable two-year statute of limitations bars all claims arising prior to July 2013. *See* LCF Mot. to Dismiss at 13-14. Plaintiff does not directly dispute this argument or raise any exception, instead asserting that he has shown a "long history" of violation of his Eighth Amendment rights. Pl.'s LCF Resp. at 11. The undersigned need not determine whether any such claims are time-barred, however, because even considering these earlier allegations Plaintiff fails to state a claim for relief as to his medical treatment from 2010 to mid-2014, as explained below.

In 2013 Plaintiff's mother contacted Defendant Stouffer regarding Plaintiff's medical issues, and Defendant Stouffer told his mother that Plaintiff should submit a "sick call" request. *Id.* Plaintiff then submitted a Sick Call request on July 27, 2013, regarding his rash and itching and seeking "allergy medication such as Zyrtec or Benadryl" and a nurse visit. Plaintiff was seen by medical personnel approximately one week later and received unspecified allergy medications, which "didn't work," leading Plaintiff to purchase "C.T.M's" from the facility canteen. *Id.*

On September 11, 2013, Plaintiff submitted a Sick Call request regarding his skin and wishing to change his treatment. Plaintiff "was given more sori[a]tane," but that medication was then "discontinued." *Id.* Plaintiff states that he "was then removed from any/all medications to help/alleviate [his] pain, bleeding, itching and cracking skin," but he simultaneously alleges that he "was continued on Methotr[e]xate." *Id.* at 5-6.

On November 7, 2013, Plaintiff submitted an administrative request to be transferred to a different facility to receive adequate medical care for his plaque psoriasis. *Id.* at 6. Defendant Stouffer informed him there was no basis for a medical transfer. *Id.*

On February 5, 2014, Plaintiff submitted a "sick call" request in which he stated that he did not think the Methotrexate was working. Plaintiff was notified of his medical appointment on or around February 17, 2014, and at this appointment was "again given" prednisone. *Id.*

On May 4, 2014, Plaintiff submitted a Sick Call request expressing that his prednisone tapering-down schedule had not worked, and he was scheduled for an appointment. *Id.* Plaintiff also submitted an administrative request asking to see a

dermatologist; Defendant Stouffer responded by transmitting Plaintiff the form used to request an appointment with an outside provider. *Id.* On May 25, 2014, Plaintiff submitted a sick-call request regarding his skin and joints, resulting in an "appointment set on 5-29-14 for future appointment." *Id.*

On or around June 6, 2014, Plaintiff wrote a letter to Defendant McCoy detailing his medical issues. *Id.* at 7. Plaintiff received a response on July 3, 2014, explaining that he had failed to raise his complaints through a formal grievance and "threatening [him] with a 'grievance restriction.'" *Id.*

Plaintiff states that he requested "a 'known cream' (Eucerin)" but was refused "until P.A. Castro got involved in 2015." *Id.* Plaintiff also alleges, however, that he had previously received this cream. *See id.* Plaintiff submitted a request for Eucerin and for Triamcinolone on June 13, 2014, and was told these items had been issued. *Id.* On June 17, 2014, Plaintiff requested a container of Eucerin. Defendant Stouffer told him that he did not have an order for Eucerin cream and that she could not order medications. *Id.* Plaintiff alleges that the LCF canteen no longer sells Vaseline or "hair food," which he had been purchasing to assist with skin issues. *Id.* at 8.

On June 19, 2014, Plaintiff requested that pictures of his skin be taken for his medical records; Defendant Stouffer denied this request. *Id.* at 7. Plaintiff alleges that he has submitted "sick calls" properly but he does not receive them back attesting to their proper submission.[3] *Id.* at 7-8.

---

[3] Plaintiff's Complaint also contains scattered references to insults and to "issues" with prison officials and other inmates due to his unattractive skin condition. *See, e.g.*, Compl.

On June 11, 2014, Plaintiff filed an administrative grievance regarding his attempt to see a dermatologist. The referral to a dermatologist was completed on June 17, 2014. *Id.* at 6-7. On approximately September 8, 2014, Plaintiff was seen by dermatologist Dr. Alford Last, who "referred" Plaintiff to a rheumatologist. *See id.* at 7, 8, 10. Plaintiff alleges that as of the date the Complaint was filed, Defendant Stouffer had "refuse[d] to follow up & make an appointment with" a rheumatologist despite Dr. Last having recommending this "specific course of treatment." *Id.* at 2, 8, 10. Plaintiff alleges that the denial to him of access to a rheumatologist is deliberate, is causing pain and suffering, and that Defendants ODOC and McCoy "refuse to assist." *Id.* at 7, 8, 10.

*B. 42 U.S.C. § 1983 and Eighth Amendment Standards*

To state a claim for relief under 42 U.S.C. § 1983, "a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988); *see* 42 U.S.C. § 1983; *Phillips v. Tiona*, 508 F. App'x 737, 750 (10th Cir. 2013) ("We have long assumed that employees of a private prison act under color of state law for purposes of § 1983 suits by inmates . . . .").

"A prison official's deliberate indifference to an inmate's serious medical needs is a violation of the Eighth Amendment's prohibition against cruel and unusual punishment." *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005) (citing *Estelle v. Gamble*,

---

at 5, 7. These allegations are "irrelevant to the Eighth Amendment analysis" and cannot be reasonably construed as raising a stand-alone excessive force or failure-to-protect claim. *See Conley v. McKune*, 529 F. App'x 914, 921 (10th Cir. 2013); Fed. R. Civ. P. 8(a)(2); *Whitney*, 113 F.3d at 1175.

429 U.S. 97, 104 (1976)). A two-prong standard governs claims of deliberate indifference to serious medical needs. To establish the objective prong of this Eighth Amendment claim, Plaintiff must show "that the deprivation at issue was in fact 'sufficiently serious.'" *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).

> We have said that a medical need is sufficiently serious if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. Where the necessity for treatment would not be obvious to a lay person, the medical judgment of the physician, even if grossly negligent, is not subject to second-guessing in the guise of an Eighth Amendment claim.

*Id.* (citation and internal quotation marks omitted).

To establish the subjective component—i.e., deliberate indifference to "a substantial risk of serious harm"—Plaintiff must show that the prison official in question acted with a "culpable state of mind." *Id.*; *Farmer*, 511 U.S. at 834, 836, 837.

> The subjective component is satisfied if the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and she must also draw the inference. A prison medical professional who serves solely as a gatekeeper for other medical personnel capable of treating the condition may be held liable under the deliberate indifference standard if she delays or refuses to fulfill that gatekeeper role.

*Mata*, 427 F.3d at 751 (alteration, omission, citations, and internal quotation marks omitted).

### C. Plaintiff's Eighth Amendment Claims

All Defendants seek dismissal of Plaintiff's constitutional claims based on, among other grounds, Plaintiff's failure to plausibly allege a violation of his Eighth Amendment

rights upon which relief can be granted. *See* ODOC Mot. to Dismiss at 12-16; LCF Mot. to Dismiss at 6-9. Defendants do not specifically challenge Plaintiff's pleading as to the objective prong of his claims—i.e., whether Plaintiff's "medical need is sufficiently serious." *Mata*, 427 F.3d at 751 (internal quotation marks omitted). The undersigned likewise concludes that Plaintiff's allegations of itching, burning, and bleeding across his entire body, and of having received a diagnosis and ongoing medical treatment for his condition, are adequate to plead the objective component of an Eighth Amendment claim. *See id.*; Compl. at 2, 5-8, 10.

Defendants do assert, however, that Plaintiff has failed to adequately allege facts that satisfy the subjective element of his claims—i.e., that Defendants "acted or failed to act despite [their] knowledge of a substantial risk of serious harm" to Plaintiff. *Mata*, 427 F.3d at 752 (emphasis and internal quotation marks omitted). The undersigned examines each of Plaintiff's claims in turn.

*1. Medical Treatment Claim*

As summarized above, Plaintiff's own allegations of the medical care he received at LCF from 2010 to mid-2014 reflect continuous medical treatment for his psoriasis, without significant delays, and multiple efforts to alleviate his suffering by both prison and outside medical personnel. No deliberate indifference is shown by the fact that various medical providers have formed different opinions and ordered different prescriptions for Plaintiff. Nor has Plaintiff implicated an Eighth Amendment violation by pleading that he has not received the exact medicines or treatment he desired.

> While jailers are ultimately responsible for their inmates' medical needs, *Farmer*[, 511 U.S. at 833-34], they can provide that care in a variety of ways, including access to trained personnel such as guards in the first instance, nurses, and physicians' assistants. The Eighth Amendment requires nothing more as a general matter. While access to a medical doctor may be necessary in certain situations, no constitutional violation occurs unless medical care is intentionally or recklessly denied.

*Boyett v. Cnty. of Washington*, 282 F. App'x 667, 673 (10th Cir. 2008) (citations omitted); *see also Perkins v. Kan. Dep't of Corr.*, 165 F.3d 803, 811 (10th Cir. 1999) ("[A] prisoner who merely disagrees with a diagnosis or a prescribed course of treatment does not state a constitutional violation."); *Coppinger v. Townsend*, 398 F.2d 392, 394 (10th Cir. 1968) ("The prisoner's right is to medical care—not to the type or scope of medical care which he personally desires."); *cf. Gamble*, 429 U.S. at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.").

The allegations of the Complaint reflect that between 2010 and 2014, Plaintiff received numerous and frequent medical appointments, as well as various prescription and nonprescription medications, and was taken to see an outside dermatologist within a few months of first requesting an appointment. *See* Compl. at 5-8. Even liberally construed, Plaintiff's factual allegations do not reflect any denial of medical care, let alone a denial wherein officials "knew of and disregarded an excessive risk" to Plaintiff's health. *Mata*, 427 F.3d at 751, 756.

Viewing these allegations and drawing the inferences therefrom in the light most favorable to Plaintiff, the Complaint cannot be read as stating a plausible claim of violation of the Eighth Amendment from 2010 to mid-2014. A review of the Complaint

"shows that prison officials . . . recognized his serious medical condition and [were] treating it. Plaintiff simply disagrees with medical staff about the course of his treatment. This disagreement does not give rise to a claim for deliberate indifference to serious medical needs." *Perkins*, 165 F.3d at 811 (affirming dismissal on screening of Eighth Amendment claim). Plaintiff's Medical Treatment Claim, premised upon Defendants' conduct from 2010 to mid-2014, therefore, should be dismissed without prejudice under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.

### 2. *Rheumatologist Claim*

Plaintiff's claim that he has been and is still being denied an appointment with a rheumatologist, despite Dr. Last's "prescri[ption]" of this "specific course[] of treatment," is a closer question. Compl. at 7, 10. As noted above, Plaintiff contends that around September 8, 2014, Dr. Last referred or recommended that Plaintiff see a rheumatologist for treatment "due to the severe pain, inflammation, suffering, [and] lack of mobility" caused by his disease. *Id.* at 8. Plaintiff alleges that Defendant Stouffer "refuses to follow up" and make this appointment and that this refusal is "deliberately being done and is causing pain, suffering (physically, mentally, and emotionally) with my repeated requests for my need to see the rheumatologist and specific courses of treatment." *Id.* at 8, 10. Plaintiff specifically contends that Defendant Stouffer was the Correctional Health Services Administrator in the LCF Medical Department and that the Department "provide[s] medical services to offenders" and "make[s] medical decisions for offenders." *Id.* at 1; *see also id.* at 2 (alleging LCF Medical Department's refusal to

abide by Dr. Last's "prescribed specific courses of action(s)" and "refusal to provide the needed care for the arthritis this disease is causing"). Plaintiff's allegations further support the proposition that Defendant Stouffer had knowledge of both Plaintiff's medical condition and Dr. Last's specific recommendation and was in a position of responsibility and authority with respect to Plaintiff's requests for medical care. *See id.* at 1, 4, 5-8, 10.

Taken in the light most favorable to Plaintiff, his allegations adequately allege that Dr. Last expressed a medical judgment that Plaintiff needs to be seen by a rheumatologist but Defendant Stouffer has prevented that physician's specific order from being carried out. Such facts adequately support a claim that Defendant Stouffer "knew of his serious medical condition, and despite this knowledge, failed to ensure that he received treatment." *Martinez v. Garden*, 430 F.3d 1302, 1305 (10th Cir. 2005). Such conduct "may give rise to an inference" that Defendant Stouffer "acted with deliberate indifference" to a substantial risk of serious harm. *Id.* (noting that from plaintiff's alleged failure to be informed about medical appointments "one could infer that defendants did not make the appointments"); *accord Gamble*, 429 U.S. at 104-05 (noting that deliberate indifference can be manifested "by prison guards in intentionally denying or delaying access to medical care"); *Mata*, 427 F.3d at 751 ("A prison medical professional who serves solely as a gatekeeper for other medical personnel capable of treating the condition may be held liable under the deliberate indifference standard if she delays or refuses to fulfill that gatekeeper role." (omission and internal quotation marks omitted)). Plaintiff's Claim, premised directly and specifically upon Defendant Stouffer's refusal to act, also

adequately alleges Defendant Stouffer's personal involvement or participation in the alleged violation of his federal right, as required to maintain a claim against Defendant Stouffer in her individual capacity.[4]  *See Pahls v. Thomas*, 718 F.3d 1210, 1225-26 (10th Cir. 2013).

For all of these reasons, Plaintiff has stated a plausible claim against Defendant Stouffer based upon her alleged refusal to obtain a rheumatologist appointment for him. This Claim should not be dismissed under Rule 12(b)(6) as to this Defendant.

With respect to Defendants McCoy and GEO, however, Plaintiff's claim should not be permitted to proceed.  As to Defendant McCoy, an ODOC official who among other things hears administrative grievances, Plaintiff alleges that he mentioned Dr. Last's recommendation in a letter to her but she "refuse[s] to assist."  Compl. at 2, 7, 10. Such allegations are insufficient to reasonably implicate Defendant McCoy, in either her official or individual capacity, in any denial of medical care based on Plaintiff's failure to receive an appointment with a rheumatologist since September 2014.  *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (noting that a government entity can be liable on an official-capacity claim under § 1983 only when the entity itself is a "moving force" behind the deprivation of a federal right); *Stewart v. Beach*, 701 F.3d 1322, 1328 (10th Cir. 2012) ("The denial of a grievance, by itself without any connection to the violation of constitutional rights alleged by plaintiff, does not establish personal participation under

---

[4]  As a private-prison employee, Defendant Stouffer "do[es] not have an 'official capacity'" for Eleventh Amendment purposes although she can be held personally liable for § 1983 purposes. *Jones v. Barry*, 33 F. App'x 967, 971 & n.5 (10th Cir. 2002).

§ 1983." (internal quotation marks omitted)). This Claim should be dismissed as to Defendant McCoy for failure to state a claim upon which relief can be granted.

Nor has Plaintiff alleged facts that plausibly support Defendant GEO's liability on the Rheumatologist Claim. A private actor such as Defendant GEO cannot be held liable under § 1983 solely based on the actions of its employees. *Smedley v. Corr. Corp. of Am.*, 175 F. App'x 943, 946 (10th Cir. 2005) (citing *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 691 (1978)); *see also Phillips*, 508 F. App'x at 750; *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1216 (10th Cir. 2003). To establish Defendant GEO's liability under § 1983, Plaintiff must establish three basic elements: (1) an official policy or custom of Defendant GEO; (2) that caused a violation of Plaintiff's federal right(s); and (3) "was enacted or maintained with deliberate indifference to an almost inevitable" federal right(s) violation. *See Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 769-71 (10th Cir. 2013). More specifically as to the second element, Plaintiff must allege facts to establish that the referenced policy or custom either directly violated Plaintiff's federal right(s) or was the "moving force" behind an employee's violation of Plaintiff's federal right(s). *See id.* at 769, 770; *Smedley*, 175 F. App'x at 946; *accord Graham*, 473 U.S. at 166.

Plaintiff's allegation that Defendant Stouffer has denied him a prescribed course of medical treatment does not reasonably show that any policy or custom of Defendant GEO has caused the violation of his federal rights. To the contrary, Plaintiff alleges that Defendant Stouffer, in her role as an LCF official, has the ability to obtain the requested appointment but has deliberately refused to do so. *See* Compl. at 1, 5-8, 10.

Accordingly, Plaintiff's Rheumatologist Claim should be dismissed as to Defendant GEO pursuant to Federal Rule of Civil Procedure 12(b)(6).

### III. Plaintiff's Request for Injunctive Relief

Plaintiff also has filed a Motion seeking injunctive relief, together with a supporting affidavit, brief, and exhibits. *See* Pl.'s Mot. Prelim. Inj. (Doc. No. 16); Pl.'s Br. (Doc. No. 17); Doc. Nos. 17-1 to -10. In this Motion, Plaintiff seeks removal from LCF, placement into an ODOC facility with an infirmary, and an order that Defendants "get immediate appointment with Rheumatologist and abide by all prescription(s) directive(s) and course(s) of treatment without question or care to cost, transportation, ability, excuse(s) or needed approvals." Pl.'s Mot. Prelim. Inj. at 3.

Plaintiff's request is properly viewed as seeking a preliminary injunction under Federal Rule of Civil Procedure 65(a) rather than a temporary restraining order ("TRO") under Federal Rule of Civil Procedure 65(b). Rule 65(b) generally contemplates that a TRO would be issued only for a short term and "without written or oral notice to the adverse party or its attorney." *See* Fed. R. Civ. P. 65(b)(1). Because Defendants here had both notice and an opportunity to respond to Plaintiff's Motion for Preliminary Injunction, the Court should treat the request for a TRO as superseded by the alternative request for a preliminary injunction. *See, e.g.*, *Kan. Hosp. Ass'n v. Whiteman*, 835 F. Supp. 1548, 1551 (D. Kan. 1993); *TLX Acquisition Corp. v. Telex Corp.*, 679 F. Supp. 1022, 1028 (W.D. Okla. 1987); *see also* 11A Charles Alan Wright et al., *Federal Practice and Procedure* § 2951 (3d ed. 2013).

A preliminary injunction is "an extraordinary remedy that may only be awarded

upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). For entry of a preliminary injunction, the movant generally must satisfy four elements: (1) a substantial likelihood that he will prevail on the merits; (2) irreparable harm unless the restraining order is issued; (3) outweighing of the harm from the threatened injury against the adversary's harm from the preliminary injunction; and (4) the absence of an adverse impact on the public interest. *Kikumura v. Hurley,* 242 F.3d 950, 955 (10th Cir. 2001). A preliminary injunction is appropriate only when the movant's right to relief is clear and unequivocal. *Id.* Although the Court will construe a pro se litigant's filings liberally, requests for relief must be supported, at a minimum, by factual allegations, which require no special legal training to provide. *See Hall*, 935 F.2d at 1110 & n.3 (stating rule of liberal construction "applies to all proceedings involving a pro se litigant"); Fed. R. Civ. P. 7(b)(1)(B) (requiring requests for a court order to "state with particularity the grounds for seeking the order").

A preliminary injunction is characterized as "mandatory" if it affirmatively requires the nonmovant to act in a particular way and, as a result, places the issuing court in a position where it may have to provide ongoing supervision to assure the nonmovant is abiding by the injunction. *Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1261 (10th Cir. 2005); *Little v. Jones*, 607 F.3d 1245, 1251 (10th Cir. 2010). Here, Plaintiff seeks relief that is mandatory—i.e., the entry of Plaintiff's requested relief would affirmatively require Defendants to act in a particular way and would place this Court in a position where it would be required to provide ongoing supervision. *See* Pl.'s Mot. Prelim. Inj. at

3; *Schrier*, 427 F.3d at 1261.  Plaintiff therefore must make a "heightened showing" on all four required elements and a "strong showing" both with regard to likelihood of success on the merits and with regard to the balance of harms in order to obtain this disfavored relief.  *See Little*, 607 F.3d at 1251; *Schrier*, 427 F.3d at 1261.  The request "must be more closely scrutinized to assure that the exigencies of the case support the granting of a remedy that is extraordinary even in the normal course." *Schrier*, 427 F.3d at 1259 (internal quotation marks omitted).

Plaintiff has not met his burden to show that a mandatory preliminary injunction should issue.  In particular, although Plaintiff points to his pain and suffering, the exhibits to his Motion, as well as his initial pleading in this case, indisputably reflect that Plaintiff has been and continues to receive frequent medical care both within and outside his prison facility, including appointments, prescriptions, and other medication.  There is no allegation that Plaintiff is being denied care altogether or that he would not receive assistance in an emergency.  While Plaintiff alleges a denial of one particular appointment, such a withholding does not itself show that he is faced with "irreparable" medical harm.  Stated differently, the fact that Plaintiff has stated a claim for damages or ultimate injunctive relief against Defendant Stouffer that is adequate to survive dismissal does not amount to a clear, unequivocal, and heightened showing of entitlement to an extraordinary interim remedy.  *See Kikumura*, 242 F.3d at 955; *Little*, 607 F.3d at 1251; *cf. Conley*, 529 F. App'x at 918, 919-21 (reversing dismissal of Eighth Amendment dental-care claim on screening but affirming denial of related request for preliminary injunctive relief); *White v. Goff*, 348 F. App'x 366, 369 (10th Cir. 2009) (upholding

denial of motion for preliminary injunction where "the record shows [plaintiff] is receiving medical treatment from Defendants").

Nor has Plaintiff demonstrated that the injunction he requests is not adverse to the public interest—the relevant public interest here being deference to prison officials' proper administration of their prison facilities. A federal court considering a motion for injunctive relief affecting the conditions of a prisoner's confinement must give substantial weight to the adverse impact on public safety and on prison operation. *See* 18 U.S.C. § 3626(a)(2); *Stephens v. Jones*, 494 F. App'x 906, 911-12 (10th Cir. 2012). The Supreme Court has declared that courts are not to substitute their judgment on matters of institutional administration for the determinations made by prison officials. *See O'Lone v. Estate of Shabazz*, 482 U.S. 342, 353 (1987). Accordingly, courts hesitate to interfere with prison officials' decisions concerning the day-to-day administration of prisons, to which deference must be afforded unless they violate the Constitution or federal law. *See Turner v. Safley*, 482 U.S. 78, 84-86 (1987). Granting the primary relief Plaintiff seeks— transfer to another facility and procurement of a specific medical appointment—would require this Court to intrude directly into the affairs of state prison administration, which for important policy reasons is a step courts should be reluctant to take. *See id.*; *cf. Stephens*, 494 F. App'x at 912 (affirming denial of requested injunctive relief as "overbroad and more intrusive than necessary"); *Johnson v. Saffle*, No. 99-6148, 2000 WL 130726, at *2 (10th Cir. Feb. 4, 2000) (affirming denial of temporary restraining order in which "the relief requested was not consistent with the public interest").

For all of these reasons, Plaintiff is not entitled to preliminary injunctive relief.

# RECOMMENDATION

The undersigned recommends that ODOC Defendants' Motion to Dismiss (Doc. No. 25) be granted in its entirety and that LCF Defendants' Motion to Dismiss (Doc. No. 34) be granted in part.

Specifically:

(i)     Plaintiff's 42 U.S.C. § 1983 claims against ODOC and for money damages against Defendant McCoy in her official capacity should be dismissed pursuant to the Eleventh Amendment;

(ii)    All claims against Defendant GEO and all remaining claims against Defendant McCoy should be dismissed for failure to state a claim upon which relief can be granted;

(iii)   Plaintiff's Eighth Amendment Medical Treatment claim should be dismissed as to Defendant Stouffer for failure to state a claim upon which relief can be granted;

(iv)    Plaintiff's Eighth Amendment Rheumatologist Claim should not be dismissed as to Defendant Stouffer; and

(v)     Plaintiff's Motion for Preliminary Injunction (Doc. No. 16) should be denied.

## NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to file an objection to this Report and Recommendation with the Clerk of this Court on or before July 21, 2016, in accordance with 28 U.S.C. § 636 and Federal Rule of Civil Procedure 72. The parties are further advised that failure to timely object to this Report and Recommendation waives the right to appellate review of both factual and legal issues contained herein. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

This Report and Recommendation does not dispose of all issues referred to the undersigned Magistrate Judge in the present case.

ENTERED this 30th day of June, 2016.

CHARLES B. GOODWIN
UNITED STATES MAGISTRATE JUDGE