**UNITED STATES DISTRICT COURT FOR THE**
**WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **JUSTIN YOST,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. CIV-15-783-F** |
| | ) | |
| **SHIRLEY STOUFFER,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## REPORT AND RECOMMENDATION

Plaintiff Justin Yost, a state prisoner appearing pro se, brings this federal civil rights action under 42 U.S.C. § 1983 alleging violations of his federal constitutional rights. United States District Judge Stephen P. Friot has referred this matter to the undersigned for initial proceedings in accordance with 28 U.S.C. § 636. For the reasons outlined herein, it is recommended that Defendant Shirley Stouffer be granted summary judgment and that all other pending motions be denied.

### BACKGROUND

Plaintiff is presently incarcerated at Lawton Correctional Facility ("LCF"), which is a private prison owned and operated by GEO Group, Inc. ("GEO"). Plaintiff's claim arises from events alleged to have occurred while he has been housed at LCF. *See* Compl. (Doc. No. 1) at 1, 2, 4-8, 10.[1] In his Complaint, Plaintiff initially alleged multiple claims against both Defendant Stouffer, LCF's prior Correctional Health Services Administrator

_____

[1] Citations to documents filed in this Court use the page numbers assigned by the Court's electronic filing system.

("CHSA"), and three other individuals. *See id.* at 1-2, 3. Following the disposition of two motions to dismiss, however, the other Defendants were dismissed from this lawsuit, and all that remains for disposition is a single claim against Defendant Stouffer ("Defendant"). *See Yost v. Stouffer*, No. CIV-15-783-F, 2016 WL 4154281 (W.D. Okla. June 30, 2016) (R. & R.), *adopted*, 2016 WL 4150935 (W.D. Okla. Aug. 4, 2016).

Defendant now seeks summary judgment on Plaintiff's remaining legal claim. *See* Def.'s Mot. Summ. J. (Doc. No. 68). Plaintiff has responded, *see* Doc. Nos. 69, 72, 73, 75, 76, 77, 78, 79, and the Motion is now at issue. In addition, a Special Report ("S.R.," Doc. No. 33) has been filed in accordance with the Court's order and *Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978). Plaintiff has submitted an unauthorized response to the Special Report. *See* Doc. No. 44.

## STANDARD OF REVIEW

Summary judgment is a means of testing in advance of trial whether the available evidence would permit a reasonable jury to find in favor of the party asserting a claim. The Court must grant summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When considering a motion for summary judgment, the Court views the evidence and the inferences drawn from the record in the light most favorable to the nonmoving party. *Pepsi-Cola Bottling Co. of Pittsburg, Inc. v. PepsiCo, Inc.*, 431 F.3d 1241, 1255 (10th Cir. 2005).

While the Court construes a pro se litigant's pleadings liberally, all parties must adhere to applicable procedural rules. *See Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir.

2007). A party that moves for summary judgment has the burden of showing that the undisputed material facts require judgment as a matter of law in its favor. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). To defeat summary judgment, the nonmovant need not convince the Court that it will prevail at trial, but it must cite sufficient evidence admissible at trial to allow a reasonable jury to find in the nonmovant's favor—i.e., to show that there is a question of material fact that must be resolved by the jury. *See Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005). Parties may establish the existence or nonexistence of a material disputed fact through:

- citation to "depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" in the record; or

- demonstration "that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."

Fed. R. Civ. P. 56(c)(1)(A)-(B).

A defendant seeking summary judgment on the basis of an affirmative defense must show that the undisputed material facts establish all of the elements of the defense. *See Hutchinson v. Pfeil*, 105 F.3d 562, 564 (10th Cir. 1997) ("The defendant . . . must demonstrate that no disputed material fact exists regarding the affirmative defense asserted."). If the defendant meets this burden, the burden shifts to the plaintiff to cite evidentiary material that shows there is a genuine factual dispute as to one or more elements of the affirmative defense, absent which summary judgment must be granted in favor of the defendant. *Id.*

In assessing Defendant's Motion for Summary Judgment, the undersigned has treated factual allegations in both parties' submissions as affidavit or declaration evidence for summary judgment purposes, to the extent that those allegations are sworn or submitted under penalty of perjury and are "made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4); *see Hall v. Bellmon*, 935 F.2d 1106, 1111 (10th Cir. 1991); *see also* 28 U.S.C. § 1746.

## PLAINTIFF'S CLAIM AND FACTUAL BACKGROUND

In his pleading, Plaintiff asserts that he has been denied proper medical care since arriving at LCF in November 2009. *See* Compl. at 2, 4-8. Plaintiff alleges that he suffers from severe plaque psoriasis over his "entire body" and that "this condition has been on-going, documented and diagnosed since 1991." *Id.* at 2. Plaintiff's allegations reflect that he frequently received medical treatment at LCF from 2010 to mid-2014. *See id.* at 5-8.

Relevant here, Plaintiff alleges that between September 2014 and the date the Complaint was filed (July 17, 2015), Defendant had "refuse[d] to follow up & make an appointment with" a rheumatologist despite an outside dermatologist having recommended this "specific course[] of treatment." *Id.* at 2, 8, 10. Plaintiff alleges that this refusal is "deliberately being done and is causing pain, suffering (physically, mentally, and emotionally) with my repeated requests for my need to see the rheumatologist and specific courses of treatment." *Id.* at 8, 10. Plaintiff specifically contends that Defendant was the CHSA in the LCF Medical Department and that the Department "provide[s] medical services to offenders" and "make[s] medical decisions for offenders." *Id.* at 1; *see also id.*

4

at 2 (alleging LCF Medical Department's refusal to abide by "prescribed specific courses of action(s)" and "refusal to provide the needed care for the arthritis this disease is causing").

The relevant, undisputed factual record, viewed in the light most favorable to Plaintiff as the nonmoving party, reflects the following as regards Plaintiff's pending Eighth Amendment claim (the "Rheumatologist Claim"):

- Defendant was the CHSA at LCF during the relevant time period. *Id.* at 1; Answer (Doc. No. 54) at 2.

- On July 29, 2014, Dr. Charles Sorenson examined Plaintiff and recommended a "[r]heumatology consult." S.R. Ex. 30 (Doc. No. 33-30) at 2.

- On September 5, 2014, an appointment for Plaintiff was scheduled at the OU Medical Center Arthritis Clinic for June 25, 2015. S.R. Ex. 32 (Doc. No. 33-32) at 1; CHSA Thomas Aff. ¶ 3, Mar. 28, 2016 (S.R. Ex. 47 (Doc. No. 33-47)); CHSA Thomas Aff. ¶ 3, Dec. 21, 2016 (Def.'s Mot. Summ. J. at 13).

- On September 18, 2014, Plaintiff was seen by an outside care provider, dermatologist Dr. Alfred Last, who recommended that Plaintiff see a rheumatologist "stat." S.R. Ex. 33 (Doc. No. 33-33) at 1-3; Answer at 3.

- Dr. Last again recommended a rheumatologist consult on October 22, 2014, and on December 10, 2014. S.R. Ex. 35 (Doc. No. 33-35) at 1-2; S.R. Ex. 36 (Doc. No. 33-36) at 1.

- On May 27, 2015, the OU Medical Center Arthritis Clinic rescheduled Plaintiff's appointment from June 25, 2015 to October 29, 2015. S.R. Ex. 40 (Doc. No. 33-40) at 1; CHSA Thomas Aff. ¶ 4, Mar. 28, 2016; CHSA Thomas Aff. ¶ 4, Dec. 21, 2016.

- On July 30, 2015, the OU Medical Center Arthritis Clinic rescheduled that appointment to February 25, 2016. S.R. Ex. 41 (Doc. No. 33-41) at 1; CHSA Thomas Aff. ¶ 4, Mar. 28, 2016; CHSA Thomas Aff. ¶ 4, Dec. 21, 2016.

- On December 29, 2015, the OU Medical Center Arthritis Clinic canceled Plaintiff's appointment and did not reschedule it. S.R. Ex. 46 (Doc. No. 33-46) at 1; CHSA Thomas Aff. ¶ 4, Mar. 28, 2016; CHSA Thomas Aff. ¶ 4, Dec. 21, 2016.

- Following this cancellation, Christina Thomas (who had replaced Defendant as LCF's CHSA) obtained an appointment at a private rheumatologist for Plaintiff. CHSA Thomas Aff. ¶¶ 5-6, Mar. 28, 2016; CHSA Thomas Aff. ¶ 5, Dec. 21, 2016.

- Plaintiff was seen and treated by rheumatologist Amy Shultz, MD, on July 5, 2016. CHSA Thomas Aff. ¶ 6, Dec. 21, 2016; Pl.'s Suppl. Exs. Z-1, Z-2, Z-3 (Doc. Nos. 75-13, -14, -15).

## ANALYSIS

### I. *Defendant's Motion for Summary Judgment*

Defendant seeks summary judgment on several grounds, including her affirmative defense that Plaintiff's claim is barred because Plaintiff did not, prior to commencing this

lawsuit, exhaust his available administrative remedies as required by the Prison Litigation Reform Act of 1995 ("PLRA"), codified in pertinent part at 42 U.S.C. § 1997e(a). *See* Def.'s Mot. Summ. J. at 2-3, 4-7.

### A. The PLRA

The PLRA provides that no action under 42 U.S.C. § 1983 may be brought by a prisoner regarding conditions of confinement "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *Woodford v. Ngo*, 548 U.S. 81, 90, 93-103 (2006) (explaining that § 1997e(a) requires "proper exhaustion"—i.e., "using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)" (internal quotation marks omitted)). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Ngo*, 548 U.S. at 90-91.

### B. The Oklahoma Department of Corrections Offender Grievance Process

The Oklahoma Department of Corrections ("ODOC") has adopted an offender Grievance Process, Operations Memorandum OP-090124, through which a prisoner in its custody at any prison facility may seek administrative decisions or answers to complaints. *See* Def.'s Mot. Summ. J. at 5 ("LCF abides by the policy and procedures of [ODOC] regarding grievance procedure . . . ."); OP-090124 (eff. Nov. 20, 2014) (S.R. Ex. 48 (Doc. No. 33-48)). The ODOC Grievance Process requires an inmate initially to attempt informal resolution of his or her complaint by speaking to an appropriate staff member within three days of the relevant incident. OP-090124 § IV(B). If the inmate is dissatisfied after this

initial attempt, he or she may submit a written "Request to Staff" within seven days of the incident. *Id*. § IV(C). This first informal level may be bypassed only if the complaint involves a sensitive topic or an emergency. *Id*. § VIII(A).

The next level of the ODOC Grievance Process is the filing of a formal grievance. If dissatisfied with the response received from a Request to Staff, the inmate may file a grievance within fifteen days of the date of the response to the Request to Staff. *Id*. § V(A)(1). The grievance is submitted to the facility's Reviewing Authority, defined as "[t]he facility head or the facility [CHSA] where the incident occurred." *Id*. §§ I(D), V(B)(1). This level may be bypassed only if the grievance "is of a sensitive nature" and involves the Reviewing Authority. *Id*. § VIII(A)(4).

The final level of the ODOC Grievance Process is the filing of a grievance appeal. If dissatisfied with the response to a grievance, the inmate may file a grievance appeal within fifteen days of the date of that response. *Id*. § VII(A), (B). The grievance appeal is submitted to the Administrative Review Authority ("ARA"), defined as the ODOC Director's designee or the ODOC Chief Medical Officer's designee. *Id*. §§ I(E), VII(B). A grievance appeal may be filed only upon the following grounds: (1) newly discovered/available evidence not considered by the Reviewing Authority; or (2) probable error committed by the Reviewing Authority such as would be grounds for reversal. *Id.* § VII(A). The ruling of the ARA is final and concludes the administrative remedy procedures available through ODOC. *Id*. § VII(D)(1).

### C. Plaintiff's Efforts to Exhaust Administrative Remedies

The undisputed factual record reflects that on June 26, 2015, Plaintiff submitted a Request to Staff inquiring as to when the rheumatologist appointment that had been recommended by an outside dermatologist would take place. S.R. Ex. 60 (Doc. No. 33-60) at 1. Defendant, as the relevant staff member, "apparently communicated verbally" to Plaintiff after receipt of this Request to Staff. S.R. at 15; *see* S.R. Ex. 61 (Doc. No. 33-61) at 1. On August 20, 2015, Plaintiff grieved this disposition of his Request to Staff via Grievance Number 15-597, requesting a response in writing. S.R. Ex. 61, at 1. The Reviewing Authority granted relief on Grievance Number 15-597 on September 2, 2015, S.R. Ex. 62 (Doc. No. 33-62) at 1, and Plaintiff received a written response to his Request to Staff bearing a date of August 28, 2015 ("OUMC has changed [the rheumatologist appointment] 3 times so far. At this time it is scheduled for the first part of 2016."). S.R. Ex. 60, at 1; S.R. at 15.[2]

Plaintiff did not appeal the disposition of Grievance Number 15-597 or otherwise seek further administrative relief on this complaint.

### D. Discussion

To obtain summary judgment on her affirmative defense that Plaintiff's Eighth Amendment claim is barred because Plaintiff failed to exhaust his available administrative remedies as required by the PLRA, Defendant must show that "administrative remedies were, in fact, available" to Plaintiff when his claim arose and that Plaintiff "failed to

---

[2] As outlined in the discussion above, the record before the Court reflects that as of the stated date the appointment had been changed two times rather than three.

exhaust these remedies." *Purkey v. CCA Det'n Ctr.*, 263 F. App'x 723, 726 (10th Cir. 2008). If Defendant makes this showing, the burden shifts to Plaintiff to show a genuine dispute over whether "an administrative remedy, although officially on the books, [was] not capable of use to obtain relief." *Ross v. Blake*, 136 S. Ct. 1850, 1859 (2016); *accord Tuckel v. Grover*, 660 F.3d 1249, 1254 (10th Cir. 2011).

It is well established that a plaintiff must exhaust his or her administrative remedies *before* commencing a lawsuit on the relevant complaint. *See Jones v. Bock*, 549 U.S. 199, 219-20 (2007) ("All [courts] agree that no unexhausted claim may be considered."); *Ngo*, 548 U.S. at 101-02 (noting that § 1997e(a) directs "that a judicial remedy may not be sought or obtained unless, until, or before certain other remedies are exhausted"). Here, the record indisputably reflects that when Plaintiff filed this lawsuit on July 17, 2015, he had submitted a Request to Staff regarding his rheumatologist appointment but had not yet sought further administrative review through Grievance Number 15-597. This Grievance was not submitted to the Reviewing Authority until August 20, 2015. *See* S.R. Ex. 60, at 1; S.R. Ex. 61, at 1. Therefore, even assuming that Plaintiff's efforts described above would otherwise be sufficient to exhaust his Rheumatologist Claim,[3] he failed to complete

---

[3] Defendant implies that Plaintiff's administrative complaint, which simply inquired as to *when* a rheumatologist appointment would take place, was insufficiently related to his Rheumatologist Claim, which objects that the *denial* of such an appointment constitutes deliberate indifference to Plaintiff's serious medical needs. *See* Def.'s Mot. Summ. J. at 6-7; *see also Kikumura v. Osagie*, 461 F.3d 1269, 1282-85 (10th Cir. 2006) (holding that PLRA's exhaustion requirement is satisfied "so long as [the federal inmate's grievance] provides prison officials with enough information to investigate and address the inmate's complaint internally"), *overruled on other grounds as recognized in Robbins v. Oklahoma*, 519 F.3d 1242, 1246 (10th Cir. 2008); *accord Pfeil v. Lampert*, 603 F. App'x 665, 671 (10th Cir. 2015) (applying *Kikumura*'s standard to state prisoner's exhaustion of federal

those efforts prior to filing suit and thus "failed to exhaust th[o]se remedies" as required by the PLRA. *Purkey*, 263 F. App'x at 726; *see* 42 U.S.C. § 1997e(a); *see, e.g., Jernigan v. Stuchell*, 304 F.3d 1030, 1032-33 (10th Cir. 2002) (upholding district court's finding that plaintiff had failed to exhaust administrative remedies where plaintiff's grievance appeal was rejected but plaintiff filed lawsuit rather than resubmitting his appeal as instructed); *cf. Ngo*, 548 U.S. at 93 (noting that the PLRA exhaustion requirement "seeks to afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case" (alteration and internal quotation marks omitted)); OP-090124 § II(B)(2) (prescribing that "matters that are in the course of litigation" are nongrievable).

Defendant thus has met her burden to show that the undisputed material facts establish that administrative remedies were available and that Plaintiff failed to exhaust these remedies prior to commencing this lawsuit, as required by the PLRA. *See Hutchinson*, 105 F.3d at 564; *Purkey*, 263 F. App'x at 726. To defeat summary judgment, therefore, Plaintiff must show a genuine dispute as to whether ODOC's administrative remedies were "not capable of use to obtain relief" in this case. *Blake*, 136 S. Ct. at 1859. Plaintiff has not done so.

---

claims); *Davis v. Okla. Dep't of Corr.*, No. CIV-06-229-HE, 2007 WL 869650, at *10-11 (W.D. Okla. Mar. 20, 2007) (holding that a grievance must "sufficiently alert prison officials as to the nature of the alleged wrong"). Even if this argument had been adequately raised by Defendant, however, it is not necessary to determine whether Plaintiff's complaints sufficiently apprised officials of the Rheumatologist Claim, given Plaintiff's failure to reach even the grievance level of the process before filing his lawsuit.

Plaintiff first objects that the complaint raised by the administrative submissions cited above should be "considered exhausted" because the Reviewing Authority granted relief on Grievance Number 15-597. But Plaintiff does not dispute that this relief was granted only after he had filed this lawsuit in July 2015. *See* Pl.'s Resp. to Def.'s Mot. Summ. J. (Doc. No. 77) at 4-5; S.R. Ex. 61, at 1; S.R. Ex. 62, at 1.[4]

Plaintiff also points to a separate effort to seek administrative relief originating with a Request to Staff filed in June 2014 and culminating with denial of a grievance appeal in October 2014. *See* Pl.'s Resp. at 3-4; S.R. Exs. 54 to 59 (Doc. Nos. 33-54 to 33-59). But this earlier complaint was focused upon a failure to receive a specific lotion, not Defendant's alleged denial of an appointment with a rheumatologist as recommended by Dr. Last, and Plaintiff's relevant legal claims regarding his medical treatment from 2010 to mid-2014 already have been dismissed by the Court. *See* S.R. Exs. 54 to 59; *Yost*, 2016 WL 4150935, at *1; *see also Pfeil*, 603 F. App'x at 671; *Davis*, 2007 WL 869650, at *10-11.

---

[4] Although proper exhaustion generally requires that the inmate "us[e] all steps that the agency holds out," *Ngo*, 548 U.S. at 90 (internal quotation marks omitted), there is case law to support Plaintiff's contention that because relief was granted upon Grievance Number 15-597, and because that relief consisted of an answer to the Request to Staff affirmatively stating that a rheumatologist appointment had been scheduled, Plaintiff's issue was "considered exhausted," as "[t]here [was] no need to go any fu[r]ther." Pl.'s Resp. at 4-5; *see, e.g., Malone v. Franklin*, 113 F. App'x 364, 366 (10th Cir. 2004) ("The Warden having granted relief, we do not think that Mr. Malone was required to appeal or to institute a new grievance to obtain the same relief."). The undersigned need not determine whether Plaintiff's efforts would have been sufficient, however, because there is no dispute that no relief had been granted when Plaintiff filed this lawsuit in July 2015.

Upon review of the arguments and evidentiary materials presented by the parties, the undersigned concludes that Plaintiff did not exhaust his available administrative remedies with respect to his Rheumatologist Claim prior to bringing this lawsuit. Substantial compliance with ODOC's "'deadlines and other critical procedural rules'" is not sufficient under the PLRA. *Craft v. Null*, 543 F. App'x 778, 779 (10th Cir. 2013) (quoting *Ngo*, 548 U.S. at 90); *Jernigan*, 304 F.3d at 1032. "The PLRA clearly prohibits a district court from overlooking grievance procedures set by prison officials." *Smith v. Jones*, 606 F. App'x 899, 902 (10th Cir. 2015).

The liberal construction afforded Plaintiff's filings does not relieve Plaintiff from carrying his burden in opposing Defendant's properly supported motion for summary judgment. Plaintiff's declarations and supporting documents are insufficient to "demonstrate with specificity the existence of a disputed material fact." *See Hutchinson*, 105 F.3d at 564. Specifically, Plaintiff fails to present evidentiary material that shows a genuine dispute as to whether he exhausted his remedies "before" he "filed the suit" on July 17, 2015, or whether prison officials thwarted Plaintiff's compliance with administrative exhaustion procedures such that exhaustion should be excused. *Craft*, 543 F. App'x at 779; *see Blake*, 136 S. Ct. at 1859; *Tuckel*, 660 F.3d at 1254; Fed. R. Civ. P. 56(a), (c)(1). Accordingly, the undersigned concludes that Defendant's affirmative defense of nonexhaustion of administrative remedies is established as a matter of law, and, therefore, summary judgment should be entered in favor of Defendant on Plaintiff's remaining federal-law claim.

## II.  Plaintiff's Motion for Injunctive Relief

Plaintiff has filed a Motion for Injunctive Relief, along with some supporting documents.  *See* Pl.'s Mot. Inj. Relief (Doc. No. 59); Doc. Nos. 49, 55, 60, 67, 69, 75, 76-1, 77-1.  Liberally construed, Plaintiff's Motion alleges that LCF officials are not taking his medical claims seriously and have not provided him with one of the medications prescribed by Dr. Shultz at his appointment on July 5, 2016.  *See* Doc. No. 49, at 1-2; Pl.'s Mot. Inj. Relief at 1; Doc. No. 76-1, at 5; Doc. No. 77-1, at 1.  Plaintiff asks: (i) that the Court "order L.C.F. to take pictures of Plaintiff[']s condition and send [those pictures] to the Court," so that the Court may see Plaintiff's skin condition; and (ii) that the Court order LCF officials to provide Plaintiff with all of the medications prescribed to Plaintiff by Dr. Shultz.  *See* Pl.'s Mot. Inj. Relief at 1; Doc. Nos. 60, 69; Pl.'s Suppl. Exs. Z-1, Z-2, Z-3.

Plaintiff's request is properly viewed as seeking a preliminary injunction under Federal Rule of Civil Procedure 65(a) rather than a temporary restraining order ("TRO") under Federal Rule of Civil Procedure 65(b).  Rule 65(b) generally contemplates that a TRO would be issued only for a short term and "without written or oral notice to the adverse party or its attorney."  *See* Fed. R. Civ. P. 65(b)(1).  Because Defendant here had both notice and an opportunity to respond to Plaintiff's Motion for Preliminary Injunction, the Court should treat the request for a TRO as superseded by the alternative request for a preliminary injunction.  *See, e.g.*, *Yost*, 2016 WL 4154281, at *9; *see also* 11A Charles Alan Wright et al., *Federal Practice and Procedure* § 2951 (3d ed. 2013).

A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."  *Winter v. Natural Res.*

*Def. Council, Inc.*, 555 U.S. 7, 22 (2008).  For entry of a preliminary injunction, the movant generally must satisfy four elements: (1) a substantial likelihood that he will prevail on the merits; (2) irreparable harm unless the injunction is issued; (3) outweighing of the harm from the threatened injury against the adversary's harm from the preliminary injunction; and (4) the absence of an adverse impact on the public interest.  *Kikumura v. Hurley*, 242 F.3d 950, 955 (10th Cir. 2001).  A preliminary injunction is appropriate only when the movant's right to relief is clear and unequivocal.  *Id.*  Although the Court will construe a pro se litigant's filings liberally, requests for relief must be supported, at a minimum, by factual allegations, which require no special legal training to provide.  *See Hall*, 935 F.2d at 1110 & n.3 (stating rule of liberal construction "applies to all proceedings involving a pro se litigant"); Fed. R. Civ. P. 7(b)(1)(B) (requiring requests for a court order to "state with particularity the grounds for seeking the order").

A preliminary injunction is characterized as "mandatory" if it affirmatively requires the nonmovant to act in a particular way.  *Little v. Jones*, 607 F.3d 1245, 1251 (10th Cir. 2010); *see also Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1261 (10th Cir. 2005).  Here, Plaintiff seeks relief that is mandatory—i.e., the entry of Plaintiff's requested relief would "require[] the nonmoving party to take affirmative action" and may require the Court "to provide ongoing supervision to [ensure] the nonmovant is abiding by the injunction." *Little*, 607 F.3d at 1251; *Schrier*, 427 F.3d at 1261 (internal quotation marks omitted). Plaintiff therefore must make a "heightened showing" on all four required elements and a "strong showing" both with regard to likelihood of success on the merits and with regard

to the balance of harms in order to obtain this disfavored relief. *See Little*, 607 F.3d at 1251; *Schrier*, 427 F.3d at 1261.

As to Plaintiff's first request, such relief is inappropriate even without regard to the preliminary-injunction factors. Plaintiff is essentially requesting that the Court assist him in prosecuting this lawsuit by procuring photographic evidence to support his medical-care-related legal claims. The Court may not assist any litigant with such discovery or prosecution efforts. *Cf. Patel v. United States*, 399 F. App'x 355, 359 (10th Cir. 2010) (noting that "the in forma pauperis statute [28 U.S.C. § 1915] makes no provision for litigation expenses other than the reproduction of the record and transcripts"); *Hall*, 935 F.2d at 1110 ("[W]e do not believe it is the proper function of the district court to assume the role of advocate for the pro se litigant."). As regards entry of a preliminary injunction, Plaintiff has not adequately shown that requiring prison officials to produce and submit photographs of his skin condition would prevent irreparable harm from occurring or is not adverse to the public interest. *See Kikumura,* 242 F.3d at 955; *Turner v. Safley*, 482 U.S. 78, 84-86 (1987).

As to Plaintiff's second request, he likewise has not met his burden to show that a mandatory preliminary injunction should issue. Defendant did not respond to Plaintiff's Motion for Injunctive Relief but has submitted affidavit testimony from CHSA Thomas stating that Plaintiff "was prescribed two medications" by Dr. Shultz "[that] he is now receiving." CHSA Thomas Aff. ¶ 6, Dec. 21, 2016. Plaintiff in turn has declared under penalty of perjury that he was actually prescribed three medications, including Humira injections, and that he is not receiving the Humira. *See* Doc. No. 49, at 1-2; Doc. No. 76,

at 5; Doc. No. 76-1, at 5. Plaintiff's first allegation is supported by a medical record (unchallenged by Defendant) reflecting that on July 5, 2016, Dr. Shultz did prescribe three medications for Plaintiff: Humira, 40 mg subcutaneous every two weeks; Etodolac, 500 mg twice daily; and Tylenol #3, one tablet three times daily as needed for pain. *See* Pl.'s Suppl. Ex. Z-3, at 1. The record also reflects that Plaintiff has sought to obtain the Humira for treatment of his psoriasis through LCF's administrative channels. *See* Doc. Nos. 55-1, 55-2, 55-3.

Despite the factual dispute as to whether Plaintiff is receiving the Humira that was prescribed, Plaintiff has not met his burden to show that entry of a preliminary injunction is warranted. First, the only remaining Defendant in this action is no longer the CHSA at LCF and is sued only in her individual capacity. *See* CHSA Thomas Aff. ¶ 1, Dec. 21, 2016; *Yost*, 2016 WL 4154281, at *7 n.4. Liberally construed, Plaintiff is seeking preliminary injunctive relief against the current CHSA or against ODOC officials—none of whom is a party to this lawsuit. For preliminary injunctive relief to be binding against a nonparty, the movant must show that the nonparty is "in active concert or participation with" a party or a party's "officers, agents, servants, employees," or "attorneys." *See* Fed. R. Civ. P. 65(d)(2); *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 112 (1969). Plaintiff presents no factual allegations that establish that CHSA Thomas or any ODOC officials are engaged in the requisite active concert or participation with Defendant. Plaintiff thus has not shown that he is entitled to a preliminary injunction against such nonparties.

Second, a preliminary injunction grants intermediate relief of the same character as that which may be finally granted. *De Beers Consol. Mines, Ltd. v. United States*, 325 U.S. 212, 220 (1945). The Court may not enter a preliminary injunction when the movant seeks intermediate relief beyond the claims of the complaint. *See Stouffer v. Eulberg*, No. CIV-09-320-C, 2010 WL 567998, at *1, *2 & n.3 (W.D. Okla. Feb. 11, 2010) (citing *Omega World Travel, Inc. v. Trans World Airlines*, 111 F.3d 14, 16 (4th Cir. 1997) ("[A] preliminary injunction may never issue to prevent an injury or harm which not even the moving party contends was caused by the wrong claimed in the underlying action."). Thus, "the movant must establish a relationship between the injury claimed in the party's motion and the conduct asserted in the complaint." *Little*, 607 F.3d at 1251 (internal quotation marks omitted); *see also Penn v. San Juan Hosp., Inc.*, 528 F.2d 1181, 1185 (10th Cir. 1975).

Plaintiff's request is based upon an alleged denial of a medication that was prescribed at an appointment that took place nearly one year after he initiated this lawsuit. *See* Doc. No. 49, at 1-2; Doc. No. 76-1, at 5; Pl.'s Suppl. Ex. Z-3, at 1. All of the relevant allegations therefore concern conduct and actions that are wholly unmentioned in Plaintiff's Complaint, and Plaintiff "ha[s] not attempted to amend" his pleading to include these allegations. *Little*, 607 F.3d at 1251; *see* Compl. at 2, 4-8, 10. Plaintiff therefore has not shown the requite relationship between the conduct asserted in the Complaint and the injury claimed in his Motion, and his request for injunctive relief should be denied. *See Little*, 607 F.3d at 1251; *see, e.g.*, *McMiller v. Corr. Corp. of Am.*, No. CIV-14-161-W, 2016 WL 1045567, at *1 (W.D. Okla. Mar. 15, 2016) ("The prison officials whose conduct

is the subject of the instant motion are not parties and their conduct—refusal to provide certain prescribed medication—is not related to the events giving rise to this lawsuit.")

Third, although Plaintiff points to his pain and suffering, the record before the Court indisputably reflects that Plaintiff has been and still continues to receive medical care for his psoriasis both within and outside his prison facility, including appointments, prescriptions, and medications. *See, e.g.*, Compl. at 5-8; Pl.'s Suppl. Exs. Z-1, Z-2, Z-3; Doc. No. 55-5, at 1. There is no allegation that Plaintiff is being denied care altogether or that he would not receive assistance in an emergency. While Plaintiff alleges a denial of one particular medication (out of the three prescribed by Dr. Shultz), such a withholding does not itself show that he is faced with "irreparable" medical harm or amount to a clear, unequivocal, and heightened showing of entitlement to an extraordinary interim remedy. *See Kikumura*, 242 F.3d at 955; *Little*, 607 F.3d at 1251; *White v. Goff*, 348 F. App'x 366, 369 (10th Cir. 2009) (upholding denial of motion for preliminary injunction where "the record shows [plaintiff] is receiving medical treatment from Defendants").

Finally, Plaintiff has not demonstrated that the injunction he requests is not adverse to the public interest—the relevant public interest here being deference to prison officials' proper administration of their prison facilities. A federal court considering a motion for injunctive relief affecting the conditions of a prisoner's confinement must give substantial weight to the adverse impact on public safety and on prison operation. *See* 18 U.S.C. § 3626(a)(2); *Stephens v. Jones*, 494 F. App'x 906, 911-12 (10th Cir. 2012). The Supreme Court has declared that courts are not to substitute their judgment on matters of institutional administration for the determinations made by prison officials. *See O'Lone v. Estate of*

*Shabazz*, 482 U.S. 342, 353 (1987). Accordingly, courts hesitate to interfere with prison officials' decisions concerning the day-to-day administration of prisons, to which deference must be afforded unless they violate the Constitution or federal law. *See Safley*, 482 U.S. at 84-86. Granting the relief Plaintiff seeks—ordering LCF officials to provide Plaintiff with Humira injections—would require this Court to intrude directly into the affairs of state prison administration, which for important policy reasons is a step courts should be reluctant to take. *See id.*; *cf. Stephens*, 494 F. App'x at 912 (affirming denial of requested injunctive relief as "overbroad and more intrusive than necessary"); *Johnson v. Saffle*, No. 99-6148, 2000 WL 130726, at *2 (10th Cir. Feb. 4, 2000) (affirming denial of temporary restraining order in which "the relief requested was not consistent with the public interest").

For all of these reasons, Plaintiff is not entitled to preliminary injunctive relief.

## RECOMMENDATION

The undersigned recommends that Defendant's Motion for Summary Judgment (Doc. No. 68) be granted. It is further recommended that Plaintiff's Motion for Injunctive Relief (Doc. No. 59) and Plaintiff's Motion for Extension of Time (Doc. No. 74)[5] be

---

[5] Plaintiff sought additional time to respond to Defendant's Motion for Summary Judgment but filed his Response before his request had been ruled upon. In his request, Plaintiff sought an extension because (1) he had not yet received medical-record documents that he had requested through party discovery and (2) he wished to obtain an affidavit from another inmate regarding a misdirected mailing. *See* Pl.'s Mot. Extension at 1-4. But as to the first reason, Plaintiff did not file a motion to compel production of any discovery, his summary judgment Response indicated that he had received at least a portion of the medical records he had sought from Defendant (*see* Pl.'s Suppl. Exs. Z-1, Z-2, Z-3), and the discovery as described would not be relevant to the dispositive issue of exhaustion of administrative remedies. *See* Pl.'s Mot. Extension at 2-3; Pl.'s Mot. Extension Ex. 1 (Doc. No. 74-1) at

denied.

NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to file an objection to this Report and Recommendation with the Clerk of this Court on or before September 14, 2017, in accordance with 28 U.S.C. § 636 and Federal Rule of Civil Procedure 72. The parties are further advised that failure to timely object to this Report and Recommendation waives the right to appellate review of both factual and legal issues contained herein. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the present case.

ENTERED this 24th day of August, 2017.

_____
CHARLES B. GOODWIN
UNITED STATES MAGISTRATE JUDGE

---

1. As to the second reason, the sought-after affidavit from another inmate likewise would not address Plaintiff's administrative exhaustion efforts and, thus, would not affect the undersigned's recommendation herein. *See* Pl.'s Mot. Extension at 3-4.